UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHRISTOPHER OLIVIERI,                  )

                                       )

               Plaintiff,       )      **AMENDED COMPLAINT**

                                       )

    -against-                )      **JURY TRIAL DEMANDED**

                                       )

THE CITY OF NEW YORK; POLICE OFFICER )     17 Civ. 5947 (VSB)
STEVE JUILLET, Shield No. 27210; POLICE )
OFFICER PAOLO PONCE, Shield No. 08421; )
POLICE OFFICER (retired) VINCENT EWERT, )
Shield No. 08435; POLICE OFFICER HANS )
JEANNOT, Shield No. 83040; POLICE     )
LIEUTENANT CHRIS CATECHIS; POLICE   )
SERGEANT (retired) SCOTT BURTON, Shield )
No. 00728; POLICE SERGEANT SASA MARIC, )
Shield No. 0298; POLICE SERGEANT JESSE )
MELHUS, Shield No. 01271; POLICE OFFICER )
JONATHAN URSO, Shield No. 02645; POLICE )
LIEUTENANT JOHN MCNEILL; JOHN DOE  )
CANINE OFFICER; JOHN DOES; and RICHARD )
ROES,                                 )

                                       )

                     Defendants.   )
-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

     1.      This is a civil rights action in which the plaintiff CHRISTOPHER OLIVIERI seeks

relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983, by the United States Constitution, including its First, Fourth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks

damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and

attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## JURY TRIAL DEMANDED

3.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

5.      Plaintiff filed a Notice of Claim with the Comptroller of the City of New York on July 29, 2016, within 90 days of the May 11, 2016 incident.  More than 30 days have elapsed since service of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

6.      Plaintiff was at all times relevant herein a resident of the State of New Jersey.

7.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks

2

incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

8.     Defendants POLICE OFFICER STEVE JUILLET, Shield No. 27210; POLICE OFFICER PAOLO PONCE, Shield No. 08421; POLICE OFFICER (retired) VINCENT EWERT, Shield No. 08435; POLICE OFFICER HANS JEANNOT, Shield No. 83040; POLICE LIEUTENANT CHRIS CATECHIS; POLICE SERGEANT (retired) SCOTT BURTON, Shield No. 00728; POLICE SERGEANT SASA MARIC, Shield No. 0298; POLICE SERGEANT JESSE MELHUS, Shield No. 01271; POLICE OFFICER JONATHAN URSO, Shield No. 02645; POLICE LIEUTENANT JOHN MCNEILL; JOHN DOE CANINE OFFICER; and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE OFFICER STEVE JUILLET, Shield No. 27210; POLICE OFFICER PAOLO PONCE, Shield No. 08421; POLICE OFFICER (retired) VINCENT EWERT, Shield No. 08435; POLICE OFFICER HANS JEANNOT, Shield No. 83040; POLICE LIEUTENANT CHRIS CATECHIS; POLICE SERGEANT (retired)

3

SCOTT BURTON, Shield No. 00728; POLICE SERGEANT SASA MARIC, Shield No. 0298;

POLICE SERGEANT JESSE MELHUS, Shield No. 01271; POLICE OFFICER JONATHAN

URSO, Shield No. 02645; POLICE LIEUTENANT JOHN MCNEILL; JOHN DOE CANINE

OFFICER; and JOHN DOES are sued individually.

       9.     Defendants POLICE LIEUTENANT CHRIS CATECHIS; POLICE SERGEANT

(retired) SCOTT BURTON, Shield No. 00728; POLICE SERGEANT SASA MARIC, Shield

No. 0298; POLICE SERGEANT JESSE MELHUS, Shield No. 01271; POLICE LIEUTENANT

JOHN MCNEIL; and RICHARD ROES are and were at all times relevant herein duly appointed

and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK

and/or the New York City Police Department, responsible for the training, retention, supervision,

discipline and control of subordinate members of the police department under their command.

Defendants are and were at all times relevant herein acting under color of state law in the course

and scope of their duties and functions as supervisory officers, agents, servants, and employees of

defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power

and authority vested in them by THE CITY OF NEW YORK and the New York City Police

Department, and were otherwise performing and engaging in conduct incidental to the

performance of their lawful functions in the course of their duties.  Defendants POLICE

LIEUTENANT CHRIS CATECHIS; POLICE SERGEANT (retired) SCOTT BURTON, Shield

No. 00728; POLICE SERGEANT SASA MARIC, Shield No. 0298; POLICE SERGEANT

JESSE MELHUS, Shield No. 01271; POLICE LIEUTENANT JOHN MCNEIL; and RICHARD

ROES are sued individually.

4

## STATEMENT OF FACTS

**The May 11, 2016 Incident**

10.     On May 11, 2016, Plaintiff was in Times Square, at or around the pedestrian mall on the east side of Broadway, between 43rd and 44th Streets, New York, NY.

11.     Plaintiff's girlfriend, and another woman with them, were performing as the "painted ladies" (also sometimes known as "desnudas"), whose bare upper bodies are painted with body paint.

12.     Plaintiff had applied the body paint to his girlfriend's and the other woman's bodies, and they were walking back and forth in the pedestrian mall interacting with tourists and other passers-by who, when the feeling strikes them, will give the women a voluntary tip (most often after taking a photograph with the women).

13.     Plaintiff will take the photograph for a passer-by with the passer-by's cellular phone or camera, if the passer-by so desires.

14.     Plaintiff also usually remains in the area while the women interact with passers-by, to ensure that no one tries to do anything aggressive towards them.

15.     Plaintiff on occasion will also apply body paint to a passer-by's skin, should that be requested.

16.     Plaintiff and his girlfriend and the other woman had done this in Times Square routinely - whenever weather permitted - for a number of years prior to the date of the incident.

17.     Plaintiff and the women had been engaged in this routine activity in Times Square for a number of hours on May 11, 2016.

18.     At around 7 or 8 p.m. three men came by and were harassing the women, and

calling them "hos" (i.e., "whores" in street parlance), and also insulting Plaintiff, and throwing up gang-related signs.

19.     Plaintiff at first tried to avoid conflict with them, but they persisted in their harassment, and one of them put up his hands in a fighting posture and was plainly preparing to engage in a physical fight with Plaintiff.

20.     JOHN DOE CANINE OFFICER came by, and initially attempted to de-escalate the situation and tell the three men to leave.

21.     A number of other JOHN DOES, on information and belief including Defendants JUILLET, PONCE, EWART, JEANNOT, CATECHIS, MARIC, MELHUS, and URSO, arrived, and surrounded Plaintiff and the women.

22.     Defendant JUILLET had a reputation in Times Square for aggression.

23.     Defendant JUILLET told Plaintiff, in sum and substance, that he had received word that Plaintiff was arguing and fighting with people earlier in the day (which was not true), and that Plaintiff should shut the hell up and keep his mouth shut, that he had been waiting to get Plaintiff out of Times Square, that he was not a guy to mess with.

24.     The earlier incident had involved a deranged man threatening to cut Plaintiff's face, and Plaintiff seeking assistance from a NYPD Sergeant or Lieutenant named Sheldon (on information and belief one of Defendant JUILLET's supervisors at the NYPD Midtown South precinct, who Plaintiff knew and had a mutually pleasant and cooperative relationship with concerning plaintiff's activities in Times Square), who assisted Plaintiff and protected Plaintiff from the deranged man.

25.     Defendant JUILLET also told the other JOHN DOES Officers present, in sum and

6

substance, that Plaintiff was a troublemaker (which is also not true) and that he and his colleagues

in the NYPD were going to get Plaintiff out of Times Square, and that he was tired of seeing

Plaintiff in Times Square.

26.     Plaintiff asked Defendant JUILLET why he did not want Plaintiff to be in Times

Square, and told him about the pleasant and cooperative relationship he had with Sergeant or

Lieutenant Sheldon, as well as with a Captain O'Hare, and that these NYPD supervisors know

that Plaintiff is not a troublemaker.

27.     Defendant JUILLET asked Plaintiff for his identification.

28.     Plaintiff gave Defendant JUILLET his identification.

29.     Critical words were exchanged between Plaintiff and the Defendant Officers, and

between Plaintiff's girlfriend and the Defendant Officers.

30.     Defendant JUILLET asked Plaintiff for his address.

31.     Plaintiff responded that his address was written on his identification that Defendant

JUILLET was holding.

32.     Defendant JUILLET then got even angrier and said something to the effect of,

"you know, I'm taking his ass in."

33.     Plaintiff asked for an explanation as to what he had supposedly done to warrant

arrest (since he had not done anything remotely illegal).

34.     Plaintiff was arrested by Defendant JUILLET and PONCE one other JOHN DOE

on the scene.

35.     Defendant JUILLET handcuffed Plaintiff with an excessive and punitive tightness.

36.     Defendant JUILLET also did not double-lock the handcuffs, which allowed them

7

to continue to tighten on Plaintiff's wrists.

37.    Plaintiff's girlfriend was also arrested shortly thereafter, when the Defendant

Officers at the scene would not let her retrieve Plaintiff's suitcase in which she had some clothing.

38.    Following Plaintiff's girlfriend's arrest, JOHN DOE CANINE OFFICER called her

"cheap pussy."

39.    Plaintiff's suitcase has never been returned to him.

40.    Plaintiff complained about the painful handcuffs, but was ignored by the Defendant

Officers.

41.    Plaintiff was brought by a number of JOHN DOES Officers over to a police car,

and placed into the police car.

42.    Because Defendant JUILLET had not double-locked Plaintiff's handcuffs, they

clicked even tighter on Plaintiff's wrists when he was put into the police car while rear-

handcuffed.

43.    Plaintiff told the Defendant JOHN DOES who transported him to the Midtown

South precinct that the handcuffs were causing him a lot of pain, but was ignored.

44.    Plaintiff was held in the excessively and punitively tight handcuffs for

approximately 45 minutes.

45.    At the precinct, Defendant JUILLET again told Plaintiff, in sum and substance,

that he did not want Plaintiff out there in Times Square.

46.    Plaintiff was not given water or food while he was held at the Midtown South

precinct.

47.    Defendant Sergeant SASA is listed as the "Supervisor Approving" on the NYPD

Arrest Report and Complaint Report associated with Plaintiff's arrest on May 11, 2016.

48.     Defendant Sergeant MELHUS is listed as the "Signoff Supervisor" on the NYPD Complaint Report associated with Plaintiff's arrest on May 11, 2016.

49.     At approximately 5:00 a.m. Plaintiff was brought to Manhattan Central Booking.

50.     At approximately 6:00 p.m. on May 12, 2016, after approximately 22 hours in custody, Plaintiff was arraigned and released on his own recognizance from custody.

51.     Defendant JUILLET is the deponent on the Criminal Court Complaint lodged against Plaintiff, which charged Plaintiff with Obstruction of Governmental Administration in violation of New York Penal Law § 195.05, with Resisting Arrest in violation of New York Penal Law § 205.30, and with Disorderly Conduct in violation of New York Penal Law § 240.20(1).

52.     Defendant JUILLET false alleged, under penalty of perjury, on the Criminal Court Complaint, *inter alia*, that he observed Plaintiff yelling and screaming obscenities at three men and challenging them to a fight; that a crowd of approximately 100 people began to form; that he ordered Plaintiff to cease his conduct and that Plaintiff refused; that Plaintiff twisted away from him, refused to put Plaintiff's hands behind his back, and flailed his arms up and down, making it difficult to handcuff Plaintiff, and that Plaintiff screamed in substance, "I didn't do anything."

53.     These allegations are lies.

54.     Plaintiff was not instigating any fight with the three men - they were trying to instigate a fight with Plaintiff.

55.     Plaintiff was not yelling and screaming at them.

56.     Times Square was (as normal) crowded with people, and people were gathering to watch the police behavior at the scene, and not Plaintiff's behavior.

57.     Defendant JUILLET never ordered Plaintiff to cease any conduct, and Plaintiff never refused to cease any conduct (all of Plaintiff's conduct being lawful in any event).

58.     Plaintiff did not resist arrest, and was arrested and handcuffed by the Defendant Officers without difficulty.

59.     Plaintiff only raised his voice when the Defendant Officers began to handcuff him and he was trying to explain to them that he had given them his identification as they had requested, and then shortly thereafter when they put their hands on, arrested, and manhandled his girlfriend (which caused a number of other onlookers present at the scene to similarly voice their disapproval of the police officers' conduct).

60.     On September 21, 2016 the Obstruction of Governmental Administration charge was dismissed by the Criminal Court for facial insufficiency.

61.     On September 22, 2016 Plaintiff accepted an Adjournment in Contemplation of Dismissal as to the remaining charges, and all the remaining charges against him have thereby been dismissed.

62.     Plaintiff suffered injury to his left wrist as a result of the excessively tight handcuffs.

**The July 3, 2016 Incident**

63.     Plaintiff was again targeted and falsely arrested by Defendant JUILLET on July 3, 2016.

64.     On that date, at approximately 8:45 p.m., Plaintiff was in the pedestrian mall in front of 1535 Broadway in Times Square when some break dancers attempted to pick a fight with Plaintiff.

65.     Defendant JUILLET and approximately four or so other JOHN DOES Defendants – on information and belief including Defendants BURTON and MCNEILL - turned their backs and refused to assist Plaintiff.

66.     One of the break dancers struck Plaintiff, and Plaintiff tried to defend himself.

67.     Defendant JUILLET and other of the JOHN DOES then slammed Plaintiff hard head-first down on the pavement, and arrested Plaintiff.

68.     While Defendant JUILLET and other of the JOHN DOES had Plaintiff held down on the ground they permitted the break dancer to continue to punch Plaintiff.

69.     Defendant JUILLET told one of the JOHN DOES at the scene, in sum and substance, that they had to get rid of Plaintiff.

70.     Defendant Sergeant BURTON is listed as the "Supervisor Approving" on the NYPD Arrest Report and Complaint Report associated with Plaintiff's arrest on July 3, 2016.

71.     Defendant Lieutenant MCNEILL is listed as the "Signoff Supervisor" on the NYPD Complaint Report associated with Plaintiff's arrest on July 3, 2016.

72.     Plaintiff this time had bail set in the amount of $1,000 at arraignment, and was released upon making bail after approximately 26 hours in custody.

73.     Defendant JUILLET was once again the deponent on the Criminal Court Complaint lodged against Plaintiff, which charged Plaintiff with Assault in the Third Degree, in violation of New York Penal Law § 120.00(1), with Aggravated Harassment in the Second Degree in violation of New York Penal Law § 240.30(4), with Attempted Assault in the Third Degree in violation of New York Penal Law § 110/120.00(1), and with Harassment in the Second Degree, in violation of New York Penal Law § 240.26(1)

11

74.     Defendant JUILLET false alleged, under penalty of perjury, on the Criminal Court Complaint, that he observed Plaintiff striking a separately charged individual in the chin with a closed fist, and that Defendant JUILLET was informed by that individual that Plaintiff's conduct caused substantial pain to the individual's chin.

75.     These allegations are lies.

76.     The separately charged individual was clearly the aggressor, and that fact was known to Defendant JUILLET (and the other JOHN DOES Defendant Officers who were present at the scene) who purposefully turned their backs instead of assisting and protecting Plaintiff.

77.     Defendant JUILLET (and the other JOHN DOES Defendant Officers who were present at the scene) knew that Plaintiff was only defending himself from this individual's attack.

78.     Plaintiff, after making bail, had to appear in Criminal Court on approximately three occasions.

79.     On October 5, 2016 all charges against Plaintiff were dismissed in their entirety on the motion of the District Attorney's office.

## **FIRST CLAIM**

## **DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

80.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

81.     By their conduct and actions in seizing plaintiff, falsely arresting and imprisoning plaintiff, assaulting and battering plaintiff, searching plaintiff, abusing process against plaintiff,

12

maliciously prosecuting plaintiff, trespassing upon plaintiff, violating rights to equal protection of plaintiff, violating and retaliating for the exercise of the right to free speech and association of plaintiff, inflicting emotional distress upon plaintiff, violating rights to due process of plaintiff, fabricating evidence / false statements against plaintiff, failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment he received at the hands of other defendants, Defendants POLICE OFFICER STEVE JUILLET, Shield No. 27210; POLICE OFFICER PAOLO PONCE, Shield No. 08421; POLICE OFFICER (retired) VINCENT EWERT, Shield No. 08435; POLICE OFFICER HANS JEANNOT, Shield No. 83040; POLICE LIEUTENANT CHRIS CATECHIS; POLICE SERGEANT (retired) SCOTT BURTON, Shield No. 00728; POLICE SERGEANT SASA MARIC, Shield No. 0298; POLICE SERGEANT JESSE MELHUS, Shield No. 01271; POLICE OFFICER JONATHAN URSO, Shield No. 02645; POLICE LIEUTENANT JOHN MCNEILL; JOHN DOE CANINE OFFICER; JOHN DOES and/or RICHARD ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth and Fourteenth amendments.

82.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

83.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

84.     By their conduct in failing to remedy the wrongs committed by their subordinates

and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants

POLICE LIEUTENANT CHRIS CATECHIS; POLICE SERGEANT (retired) SCOTT

BURTON, Shield No. 00728; POLICE SERGEANT SASA MARIC, Shield No. 0298; POLICE

SERGEANT JESSE MELHUS, Shield No. 01271; POLICE LIEUTENANT JOHN MCNEIL;

and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under

42 U.S.C. §1983 and the United States Constitution, including its First, Fourth and Fourteenth

amendments.

85.     As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## THIRD CLAIM

## LIABILITY OF DEFENDANT THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

86.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

87.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants had de facto policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

88.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

89.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority or observing or documenting their activities.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

90.    At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

91.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

92.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

93.     The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of the defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

94.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### ASSAULT AND BATTERY

95.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

96.     By the actions described above, defendants did inflict assault and battery upon the plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and

damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

97.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

### FALSE ARREST AND FALSE IMPRISONMENT

98.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

99.     By the actions described above, defendants caused plaintiff to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

100.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

### VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

101.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

17

102.     By the actions described above, defendants violated, and retaliated for the exercise of, the free speech and assembly rights of plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

103.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### TRESPASS

104.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

105.     The defendants willfully, wrongfully and unlawfully trespassed upon the persons of plaintiff.

106.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

### NEGLIGENCE

107.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

108.     The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff.  The acts and conduct of the defendants were the direct and

18

proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

109.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

110.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

111.    Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

112.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM

## VIOLATION OF RIGHTS TO EQUAL PROTECTION OF LAW

113.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

114.    By the actions described above, defendants violated plaintiff's rights to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of

injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

115.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### MALICIOUS PROSECUTION

116.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

117.    By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

### ABUSE OF PROCESS

119.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

120.    By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The

purpose of activating the process was intent to harm plaintiff without economic or social excuse

or justification, and the defendants were seeking a collateral advantage or corresponding

detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct

of the defendants were the direct and proximate cause of injury and damage to plaintiff and

violated his statutory and common law rights as guaranteed by the laws and Constitution of the

State of New York.

121.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## FOURTEENTH CLAIM

## CONSTITUTIONAL TORT

122.    The plaintiffs incorporate by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

123.    Defendants, acting under color of law, violated plaintiff's rights pursuant to Article

I, §§ 6, 8, 9, 11 and 12 of the New York State Constitution.

124.    A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 9, 11

and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's

rights under those sections.

125.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## **FIFTEENTH CLAIM**

## **INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

126.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

127.    By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

128.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

      a.  Compensatory damages;

      b.  Punitive damages;

      c.  The convening and empaneling of a jury to consider the merits of the claims herein;

      d.  Costs and interest and attorney's fees;

      e.  Such other and further relief as this court may deem appropriate and equitable.


Dated:      New York, New York
             February 9, 2018

                                          _____/S/_____
                                          JEFFREY A. ROTHMAN, Esq.
                                          315 Broadway, Suite 200
                                          New York, New York 10007
                                          (212) 227-2980

                                          RONALD L. KUBY, Esq.
                                          Law Office of Ronald L. Kuby
                                          119 W. 23rd Street, Suite 900
                                          New York, New York  10011
                                          (212) 529-0223

                                          Attorneys for Plaintiff